# United States District Court

EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| LUCIEN J. TUJAGUE, JR. | § | |
| | § | |
| v. | § | Civil Action No. 4:18-CV-631 |
| | § | Judge Mazzant |
| JASON ELBERT ADKINS | § | |
| | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

On September 5, 2018, Plaintiff Lucien J. Tujague Jr. ("Tujague") filed suit against

Defendant Jason Elbert Adkins ("Adkins") for violations of the Racketeer Influenced and Corrupt

Organizations Act, violations of the Texas Theft Liability Act, constructive trust, conversion,

negligence and gross negligence, hindering a secured creditor, and conspiracy,[1] alleging that

Adkins and John Eckerd ("Eckerd"), a defendant in a related case Tujague filed, tricked him into

investing over $12.9 million in a largely non-existent tire business and pocketed his "investments"

instead. Tujague simultaneously filed a motion, seeking a temporary restraining order (a "TRO")

and a hearing for a preliminary injunction. The Court issued a TRO (Dkt. #6) and scheduled a

hearing on whether a preliminary injunction was warranted for September 20, 2018 (Dkt. #19). At

the hearing, which Adkins failed to attend, the Court concluded that Tujague's request for a

preliminary injunction should be granted (Dkt. #26) and extended the temporary restraining order

so that the Court could issue an order on the preliminary injunction. The Court now enters this

Order to formalize that determination.

---

[1] Tujague also brought claims against Adkins and the Castro Family Trust for fraudulent transfers in violation of the Texas Uniform Fraudulent Transfer Act, which have since been transferred to another district (Dkt. #29).

# BACKGROUND

The undisputed evidence reflects the following facts.[2]   Tujague is a Dallas-based businessman and investor.  In 2015, Tujague met Adkins.  Adkins told Tujague that he was seeking investments for a business in which he would purchase tires and resell them for a profit (the "Tire Business").  Tujague was hesitant to invest in light of Adkins's business relationship with Eckerd, who had purportedly swindled a friend of his in a different transaction.  However, Adkins assured Tujague that Eckerd was not involved in the Tire Business, prompting Tujague to invest by February of 2016.  Over the next 20 months, Tujague invested roughly $13 million in 40 different transactions in which Tujague would wire funds to Landash Corporation, LAD Impex, and other entities owned, in whole or in part, by Adkins.  The entities were then to purchase the tires, resell them, and share any profits with Tujague.  Adkins convinced Tujague that he had used the funds provided to purchase tires by showing him corresponding purchase orders, wire transfers, receipts, and reports.  Unbeknownst to Tujague, in several of the 40 transactions, Adkins had not used Tujague's money to purchase tires.  Instead, as Tujague would learn from Patrick Davis ("Davis"), a private investigator he hired to investigate these transactions, Adkins would immediately transfer Tujague's funds to entities Adkins and Eckerd owned and controlled (Dkt. #28, Exhibit 4).

Tujague subsequently filed this lawsuit against Adkins and seeks a preliminary injunction out of concerns Adkins may "hinder, delay, or defraud" Tujague out of funds he is or will be entitled (Dkt. #1).  Tujague notes that, although Adkins had filed for bankruptcy, the bankruptcy court handling his case refused to discharge Adkins' debt for his "refusal to cooperate" and "refusal

---

[2] The Court has accepted assertions in Plaintiff's undisputed evidence as true for the limited purpose of deciding this motion, even when those assertions would ordinarily be inadmissible.  *See Sierra Club, Lone Star Chapter v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir. 1993) (explaining that "a district court may issue a preliminary injunction without an evidentiary hearing when the facts are not in dispute.  Furthermore, at the preliminary injunction stage, the procedures in the district court are less formal, and the district court may rely on otherwise inadmissible evidence, including hearsay evidence.") (citation omitted).

to answer material questions based upon his Fifth Amendment right against self-incrimination," among other grounds.[3] *See In re Jason E. Adkins*, No. 2:18-bk-50671, Dkt. #113 at p. 2 (Bankr. S.D. Ohio June 29, 2018).   At the evidentiary hearing in support of Adkins' request for a preliminary injunction, Eckerd repeatedly invoked his Fifth Amendment right against self-incrimination when asked whether he and Adkins "created phony tax records," "flew back and forth between here and Ohio looking for investors to dupe in this scam," "approached Afif Pitagi at XPO Global Logistics and got him to execute dummy invoices," and "set out to defraud" various individuals and entities, including Tujague (Dkt. #33 at pp. 70, 71, 80, 72, 95).   Tujague and Davis also testified, generally corroborating the statements in their affidavits (Dkt. #33 at pp. 102-124).

## LEGAL STANDARD

A party seeking a preliminary injunction must establish the following elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiffs will suffer irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008).   "A preliminary injunction is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements."   *Id.*   Nevertheless, a movant "is not required to prove its case in full at a preliminary injunction hearing."   *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1985) (quoting *Univ. of Tex. v. Comenisch*, 451 U.S. 390, 395 (1981)).   The decision whether to grant a preliminary injunction lies within the sound discretion of the district court. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982).

---

[3] As a result, Adkins' bankruptcy does not prevent Tujague from filing these claims against him. *See* 11 U.S.C. § 362(c)(2) (explaining that any stay imposed after a Chapter 7 bankruptcy is filed runs until "the time a discharge is granted or denied").

**ANALYSIS**

Tujague alleges that Adkins has engaged in fraudulent conduct that would entitle him to a constructive trust. Because Tujague has established his entitlement to a preliminary injunction based on this request, *see Fed. Sav.*, 835 F.2d at 562 (explaining that a preliminary injunction can flow from a party's entitlement to a constructive trust), the Court does not address Tujague's other claims for relief, *see Planned Parenthood Gulf Coast, Inc. v. Kliebert*, 141 F.Supp.3d 604, 636 (M.D. La. 2015), *aff'd*, 862 F.3d 445 (5th Cir. 2017); *A.T.N. Indus., Inc. v. Gross*, No. 4:04-cv-02473, Dkt. #43 at p. 40 (S.D. Tex. Nov. 26, 2014), *aff'd*, 632 F. App'x 185 (5th Cir. 2015).

I.       **Likelihood of Success on the Merits**

A plaintiff seeking a preliminary injunction must present a prima facie case of his substantial likelihood to succeed on the merits, *see Daniels Health Scis., LLC v. Vascular Health Scis.*, 710 F.3d 579, 582 (5th Cir. 2013) (citing *Janvey v. Alguire*, 647 F.3d 585, 595-96 (5th Cir. 2011)). This does not require the plaintiff to establish his entitlement to summary judgment. *See Byrum v. Landreth*, 566 F.3d 442, 446 (5th Cir. 2009). Instead, the extent to which the plaintiff must be likely to succeed on the merits, "varies with the relative balance of threatened hardships facing each of the parties." *See Canal Authority of State of Fla. V. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974). Accordingly, where the plaintiff's threatened hardships substantially outweigh the defendant's, the plaintiff need only show *some* chance of success. *See id.* ("[R]egardless of the balance of relative hardships . . . the granting of a preliminary injunction would be inequitable if the plaintiff has no success on the merits.").

Because the balance of hardship weighs heavily against Adkins, as discussed below, Tujague must simply show that he *may* succeed on the merits. Tujague has, at a minimum, met this showing as to his request for a constructive trust. A party seeking a constructive trust must

establish "(1) breach of a special trust or fiduciary relationship or actual or constructive fraud; (2) unjust enrichment to the wrongdoer; and (3) an identifiable res that can be traced back to the original property." *See KCM Financial LLC v. Bradshaw*, 457 S.W.3d 70, 87-88 (Tex. 2015). Tujague indicates, in a sworn affidavit, that Adkins deceived him into "investing" in the Tire Business for profit, that this business was largely non-existent, and that Adkins, through companies he owns and controls, retained the profit for himself. Additionally, at the evidentiary hearing, Eckerd invoked his Fifth Amendment right against self-incrimination when asked whether he and Adkins "set out to defraud" various individuals and entities, including Tujague. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) (explaining that, in a civil case, it is proper to consider "a realistic reflection of the evidentiary significance of the choice to remain silent"). Tujague has consequently established, with sufficient likelihood for the limited purpose of this order, that Adkins (1) actually defrauded him out of the nearly $13 million he invested in the Tire Business, (2) it would be unjust to allow Adkins to retain that $13 million under these circumstances, and (3) the $13 million is traceable from Tujague to Adkins and/or the companies Adkins controls. *See Meadows v. Bierschwale*, 516 S.W.2d 125, 131 (Tex. 1974) ("A transaction may, depending on the circumstances, provide the basis for a constructive trust where one party to that transaction holds funds which in equity and good conscience should be possessed by another.").

## II.    **Likelihood of Irreparable Harm**

A preliminary injunction is warranted only where the plaintiff shows he is "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). "[H]arm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey*, 647 F.3d at 600. However, "the mere fact that economic damages may be available does not always mean that a remedy at law is 'adequate.'" *Id.* As such, a plaintiff seeking

economic damages is deemed to be irreparably harmed when "a meaningful decision on the merits would be impossible without an injunction." *See id.* (citing *Productos Carnics, S.A. v. Cent. Amer. Beef & Seafood Trading Co.*, 621 F.2d 683, 686-87 (5th Cir. 1980)). For instance, a plaintiff seeking economic damages will suffer irreparable harm when the defendant's dissipation of assets would require the plaintiff to initiate "'a multiplicity of suits . . . to gain relief.'" *See Fed. Sav.*, 835 F.2d at 561 (quoting *Lynch Corp. v. Omaha Nat. Bank*, 666 F.2d 1208, 1212 (1981)).

Tujague has demonstrated that he is likely to suffer irreparable injury if a preliminary injunction is not granted. The record reflects that, shortly after Tujague provided Adkins with money to invest in the Tire Business, Adkins deposited those funds into entities he controls, seemingly to make Tujague's funds difficult to trace. Consistently, in his bankruptcy case, the bankruptcy court refused to discharge Adkins' debts for his "refusal to cooperate," among other grounds. *See In re Jason E. Adkins*, No. 2:18-bk-50671, Dkt. #113 at p. 2 (Bankr. S.D. Ohio June 29, 2018). Because Tujague seeks a constructive trust for funds in Adkins' possession and/or control, a preliminary injunction that prevents Adkins from moving his assets helps ensure that the funds he provided to Adkins for investments can be returned should Tujague prevail on the merits. *See Janvey*, 647 F.3d at 600 (finding the plaintiff would suffer irreparable harm because "dissipation of the assets that are the subject of this suit . . . would impair the [district court's] ability to grant an effective relief") (modification in original). If a preliminary injunction does not issue, on the other hand, Tujague may be forced to initiate yet another lawsuit in an attempt to obtain these funds. This is especially burdensome in this case, where Tujague has already filed a related suit against Eckerd, Adkins' alleged co-conspirator, which was stayed after Eckerd filed for bankruptcy.

III.     **Balance of Hardships**

When deciding whether a preliminary injunction should issue, "courts must balance the competing claims of injury and must consider the effect on each party of granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citation omitted). As a result, the Court must balance the hardship Adkins would face against the irreparable harm Tujague face if a preliminary injunction does not issue, namely, the inability to obtain meaningful relief from this Court and the subsequent need to pursue additional lawsuits. As stated, because Adkins did not appear at the evidentiary hearing or respond to Tujague's request for a TRO or a preliminary injunction, there is no evidence that would allow the Court to conclude that this factor weighs in Adkin's favor. *See Francis v. Pulley*, No. 06-cv-480-JM, 2007 WL 119156, at *8 (D.N.H. Jan. 10, 2007) ("Pulley did not appear at the hearing on this matter. Accordingly, no evidence is before the Court regarding any hardship or imposition that would accrue to Pulley if this injunction issues."). The Court therefore concludes that the balance of hardships weighs heavily in favor of issuing a preliminary injunction.

IV.     **The Public Interest**

Finally, for a preliminary injunction to issue, the injunction must not disserve the public. The Court sees no reason why an injunction would. To the contrary, the requested injunction furthers the public's interest in protecting against fraudulent conduct. *See Joshua Ropa v. Fox*, No. 4:16-cv-752, 2016 WL 6248743, at *4 (E.D. Tex. Oct. 26, 2016).

V.     **Security**

Federal Rule of Civil Procedure 65(c) provides that the Court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or

restrained." Fed. R. Civ. P. 65(c). In determining the appropriate amount, the Court may elect to require no security at all. *See Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996). Because there is presently no evidence as to the harm Adkins may face due to the injunction and because Tujague is, presumably, the victim of Adkins' fraudulent conduct, the Court will not require any security to be posted.

## CONCLUSION

Accordingly, the Court hereby **ORDERS** that, whether by himself, or acting through any agent, employee, or co-conspirator, Defendant Jason Adkins is preliminary enjoined from:

a. Destroying, removing, concealing, encumbering, transferring, or otherwise harming or reducing the value of Plaintiff's or Defendant's property;

b. Misrepresenting or refusing to disclose to Plaintiff or to the Court on proper request the existence, amount, or location of any property;

c. Damaging or destroying tangible property of Defendant;

d. Tampering with the tangible property of Defendant, including any documents, that represents or embodies anything of value, and/or causing pecuniary loss to Plaintiff;

e. Selling, transferring, assigning, mortgaging, encumbering or in any manner alienating any of Plaintiff's or Defendant's property, whether real or personal, without obtaining the consent of Plaintiff and the Court;

f. Incurring indebtedness except as authorized by the Court;

g. Making withdrawals from any checking or saving account in any financial institution for any purpose except as authorized by the Court;

h. Spending any sum of cash for any purpose except as specifically authorized by the Court;

i. Withdrawing or borrowing in any manner for any purpose from any retirement, profit sharing, pension, disability, employee benefit plan, employee savings plan, individual retirement plan, or Keogh account;

j. Opening any new savings, checking, money market, or stock trading accounts with any bank, brokerage, or financial institution;

k. Purchasing or otherwise acquiring any interest in real property without obtaining the consent of Plaintiff and the Court;

l. Purchasing or acquiring any chattel, including Off the Road Tires ("OTR Tires"), without obtaining consent of Plaintiff and the Court;

m. Engaging in any criminal act in violation of the penal laws of the United States of America and the State of Texas.

It is further **ORDERED** that this preliminary injunction shall take effect immediately and shall remain in effect pending trial in this action or further order of the Court.

**SIGNED this 4th day of October, 2018.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE